## Hughes *against* Heiser.

### In Error.

Saturday, December 31st.

WRIT of error to the common pleas of *Berks* county. *Heiser*, the plaintiff below, brought his action against *Hughes* to recover damages for obstructing the navigation of the *Big Schuylkill.* The declaration set forth, that by an act of assembly, passed *March* 1, 1800, *Big Schuylkill*, from the mouth of *Norwegian* creek to where the *Catawissey* road crosses it, was made a public highway for the passage of boats and rafts;

To support an action on the case for damage occasioned by a common nuisance, it is not necessary that the damage sustained should have

been *direct;* it is enough if it was *consequential.*

The plaintiff declared that he had prepared rafts, with intent to navigate them down a river, which was a public highway; and that he did navigate them, until he came to a dam erected by the defendant, by which he was prevented from passing down the river with his rafts. *Held*, that this is sufficient special damage to support an action.

1808.

HUGHES
*v.*
HEISER.

with a *proviso*, that the act should not be understood to prevent any person, possessing lands on the river, who before the act had authority to erect a dam, from erecting such dam or dams as he might think proper; provided that such dam were constructed and kept in repair with a proper slope and lock, that the navigation should not be injured, nor the fish prevented from passing. It then stated that *Hughes* on the 1st *November* 1800, made a dam of the height of eight feet across the *Big Schuylkill* within the limits above mentioned, without a proper slope or lock, so that it injured the navigation, and prevented the passing of fish; and that he kept up and maintained the dam from that time until the impetration of the writ. It then proceeded as follows: " And whereas the aforesaid *Ulrich Heiser,*
" after the passing of the act of the legislature aforesaid, and
" after the dam aforesaid was erected as aforesaid by the said
" *Hugh Hughes,* to wit on the 1st day of *July* 1801 at the
" county aforesaid, had provided for himself a large quantity of
" pine boards, to wit 50,000 feet, and a large quantity of tim-
" ber of various kinds, and had the same pine boards and tim-
" ber made into three rafts, in the aforesaid *Big Schuylkill* in
" the county aforesaid, above the dam so as aforesaid erected
" by the said *Hugh Hughes,* and the said *Ulrich Heiser* did
" then and there intend to navigate the rafts aforesaid down
" the *Big Schuylkill* below the mouth of *Norwegian* creek
" aforesaid; and the said *Ulrich Heiser* further saith that on the
" first day of *July* aforesaid at the county aforesaid, the water of
" the said *Big Schuylkill* then being unusually high, he the said
" *Ulrich Heiser did navigate the rafts aforesaid containing the*
" *boards and timber aforesaid, down the river Schuylkill to the*
" *dam* so as aforesaid erected kept up and maintained contrary to
" the act aforesaid by the said *Hugh Hughes,* which rafts were
" then and there of a proper and convenient form for the navi-
" gation of the said river; and the said *Ulrich Heiser* does aver
" that the aforesaid dam, so as aforesaid by the said *Hugh*
" *Hughes* erected, was by him the said *Hugh Hughes* kept up
" and maintained on the day aforesaid at the county aforesaid,
" without a proper slope or slopes, lock or locks, and contrary
" to the act aforesaid; so that as well rafts as boats were hin-
" dered and entirely prevented from passing down the said *Big*
" *Schuylkill.* And he the said *Ulrich Heiser* says, *that he was*
" *then and there, by the dam aforesaid, erected and kept up by the*

" said *Hugh Hughes, prevented from passing down the said Big*
" *Schuylkill with his rafts aforesaid*, to the damage of the said
" *Ulrich Heiser* two hundred dollars &c."
　　The jury found for the plaintiff forty pounds damages.

　　*Evans* and *Ingersoll* for the plaintiff in error. The declaration contains no cause of action. It is founded on a common nuisance, and therefore cannot be maintained, except for a particular, direct injury, in which case the *per quod* is the gist. That the dam was a common nuisance, and that *Hughes* might have been indicted for it, is abundantly clear. *Co. Litt.* 56. *a.* 3 *Black. Com.* 219. The damage being common to all the citizens, no one can assign his proportion of it, unless he has received an injury both particular and direct. In the present case there is no particular damage whatever. If *Heiser* may sue, fifty others may do the same; for all persons passing down the river must be obstructed. It is not that he may not have suffered inconvenience, but that he has suffered an inconvenience common to many; and therefore to avoid a multiplicity of suits, the law turns him to an indictment. In the next place, the damage is consequential. No harm is charged to have been done to the rafts, or directly to the owner; and if any was sustained, it was the consequence of delay, which is not sufficient. In *Paine* v. *Partrich* (*a*) the court put this case, " that if a high-
" way be so stopt, that a man is delayed in his journey a little
" while, and by reason thereof he is damnified, or some impor-
" tant affair neglected, this is not such special damage for
" which an action on the case will lie; a particular damage to
" maintain the action, *must be direct* and not consequential; as for
" instance, the loss of a horse, or some corporal hurt, in falling
" into a trench in the highway." To the same purpose is *Hubert*
v. *Groves*, (*b*) where it was laid, that by the obstruction of the road, the plaintiff was obliged to carry his coals and timber, by a circuitous and inconvenient way; and he was nonsuited. So is *Bull. N. P.* 26. It is however agreed in all cases where special damage of some kind is necessary, that it should be laid with a *per quod*, the business of which is to close the action, and shew the cause of it. It is so in slander, where the words are not actionable in themselves; and the rule is the same in a common

(*a*) *Carth.* 194.　　　　　　　(*b*) 1 *Esp.* 148.

1808.

Hughes
v.
Heiser.

nuisance; because in both cases, it is the special damage that supports the action. The case of *Iveson* v. *Moore*, (a) in which the court was divided in opinion whether it was sufficient special damage to lay, that by the obstruction in the highway, the plaintiff's carts for carrying his coals could not pass, by which he lost the benefit and profit of his colliery, and his coals were deteriorated, is distinguishable from the present case in this, that there it was laid with a *per quod*, and the damage was well set forth. Here the damage is not special; and even the general damage is not connected by a *per quod* with the dam. Then as to the effect of the verdict: It helps a cause of action or title defectively set forth, but not where there is no title at all. In the former case, the proof of such circumstances as are necessary to complete the title imperfectly stated, may be presumed to have been made at the trial; but if the plaintiff omits to state his title altogether, it need not be proved, and cannot be presumed. *Rushton* v. *Aspinall.* (b) As where the *scienter* was omitted in an action for keeping a bull that used to run at men, the verdict did not cure. *Buxendin* v. *Sharp.* (c) Nothing is to be presumed after verdict, but what is expressly stated in the declaration, or what is necessarily implied from those facts which are stated. *Spieres* v. *Parker* (d), *Bishop* v. *Hayward* (e), *Stennell* v. *Hogg* (f). Here no special damage is stated, nor can it be implied.

*Dallas* for the defendant in error. I agree there must be special damage to support the action; but it is plain that the declaration sets it forth. The meaning of lord *Coke*, *Blackstone*, and other writers is, that while a common nuisance exists merely as a danger, there no individual can have an action, as all are in the same situation; but the instant a man is obliged to take even a circuitous route, the damage is peculiar to himself, because it is impossible that he sustains it in common with any one. Accordingly the action was held good in *Hart* v. *Basset*, (g) where the plaintiff declared that he had tithes in a certain parish, and a barn in which he intended to lay them, and that the king's highway in B. was the direct way for carrying the tithes to the barn; but that the defendant obstructed it with a ditch, so *that he was forced to carry them round about and in*

(a) 1 Ld. Ray. 493.        (d) 1 D. & E. 141.        (f) 1 Saund. 228. c.
(b) Doug. 658.             (e) 4 D. & E. 470.        (g) 4 Viner 519. pl. 7.
(c) 2 Salk. 662.

*a more difficult way.* The same was ultimately decided in Iveson v. Moore, where *Holt's* opinion was reversed by all the judges of the common pleas, and the barons of the exchequer, 12 *Mod.* 269; and it is contradicted by no case but the nisi prius decision of *Hubert* v. *Groves.* The distinction between direct and consequential damages is therefore not law at this day. An injury of any kind to person or property is a special injury; and it is only material that the person suing has a damage, which is not common to all others. *Williams's case.* (a) The present however is stronger than any of these. The raft was impeded by the dam, and it was impossible for the plaintiff to take it any other way. There is a material difference between the obstruction of a road, and that of a river. In the one case the traveller has his choice of a circuitous route; in the other the raftman has no choice at all; the property cannot pass to market, and special damage is inevitable. So that yielding the cases of *Hart* v. *Basset* and *Iveson* v. *Moore*, the plaintiff stands upon a ground that is not shaken by any case. His cause of action is also well laid. The declaration contains in strictness the *per quod;* for it sets forth that by the dam he was prevented from passing with his rafts; and it previously avers that he had come to the dam, with the intention of navigating the river. Here is a clear statement of special damage connected with its cause. It must also have been proved upon the trial, or he could not have recovered; and therefore the verdict is evidence of it. *Macmurdo* v. *Smith.* (b) At all events it is necessarily implied by the facts stated in the declaration; which brings it within all the cases cited for the plaintiff in error.

The opinion of the court was delivered by

TILGHMAN C. J. This cause comes before the court on a writ of error to the common pleas of *Berks* county. It is an action on the case for damages occasioned to *Heiser* the plaintiff below, who is defendant in error, by the defendant's obstructing the navigation of the *Big Schuylkill*, which was made a public highway by act of assembly.

The plaintiff in error contends that the declaration contains no cause of action, because it shews no special damage sustained by the plaintiff below.

(a) 5 *Rep.* 73.        (b) 7 *D. & E.* 523.

*1808.*

*Hughes*
*v.*
*Heiser.*

1808.

HUGHES
*v.*
HEISER.

The general principle has been always agreed, that for an obstruction to a highway, which is a common nuisance, an action cannot be supported, but by a person who has suffered some *special damage.* But in the application of this rule to the different cases which have arisen, there have been decisions which are not to be reconciled. In *Hart* v. *Basset* (33 *Car.* 2.) sir *T. Jones* 156, an action was supported by a person entitled to receive tithes, who in consequence of an obstruction in the highway, was forced to carry his tithes by a *circuitous route.* The declaration alleged that he was forced to carry them by a *longer and more difficult way,* and no other damage was shewn. In *Paine* v. *Partrich* (3. *Wm. and Mary*) *Carth.* 194, the court are made to say, that if by a common nuisance a man is delayed in his journey, by reason whereof he is damnified, and some important affair neglected, an action does not lie, because to support an action the damage must be *direct,* and not *consequential;* as for instance, *the loss of his horse,* or some *corporal hurt.* Such seems to have been the opinion of C. J. *Holt* in *Iveson* v. *Moor,* (10 *Wm.* 3.) *Carth.* 451, where the plaintiff alleged that he had a great quantity of coals (he being possessed of a colliery and coal mine) which he was prevented from carrying in his carts and carriages, by reason of an obstruction in the highway raised by the defendant. One of the other justices of the king's bench agreed with *Holt;* but the two others were against him. In consequence of this difference of opinion, the case was laid before all the judges on a consultation in the exchequer chamber, and they were of opinion the action lay. *Willes Rep.* 74. note *a.* In *Chichester* v. *Lethbridge* (11 *Geo.* 2.) *Willes.* 71. the plaintiff averred that at divers times between two certain days, he was travelling in his coach in a certain highway, but the defendant obstructed the said way by bars, posts, trenches, &c. and in his proper person withstood the plaintiff from removing and abating the obstruction, *so that the plaintiff then and hitherto could not and cannot have or use the said way as he ought,* to his damage forty pounds. The court were of opinion, that particular damages were assigned sufficient to support the action, and cited *Hart* v. *Basset* in support of their opinion. They said, this case was stronger than *Hart* v. *Basset* in two particulars, one of which was " that " it was expressly laid that the plaintiff was attempting to tra- " vel the road, but could not by reason of the obstructions."

469

1808.

HUGHES
v.
HEISER.

This case of *Chichester* v. *Lethbridge* appears to be the last adjudged in *England* on the subject, prior to our revolution. Since the revolution, the case of *Hubert* v. *Groves* (shortly reported in 1 *Esp.* 148.) has been adjudged in express contradiction to *Hart* v. *Basset.* This case of *Hubert* v. *Groves*, is no authority here, and no further to be regarded than its intrinsic merit demands. There is no occasion, however, to decide to which of these cases the court inclines, because they think the case before them stronger than either. The plaintiff has averred that he had procured a large quantity of boards and timber, and made them into rafts to bring down the river; that he seized the opportunity of a flood, and did come down as far as the obstruction, and was there stopped by the obstruction. It is certain that he must have suffered special damage, and the jury have found so; and if he has, it is immaterial whether it was immediate or consequential.

The court are of opinion, therefore, that the judgment in the court below was rightly given for the plaintiff, and must be affirmed.

Judgment affirmed.