First Baptist Church, &c. *v.* The Utica & Sch. Railroad Co.

267; 11 *Wend.* 31, 32; 4 *Cowen,* 550; 4 *Denio,* 243; 3 *Cowen,* 39, 42.)   The action is therefore left without the shadow of a foundation to rest upon.

Motion for new trial denied.

WASHINGTON GENERAL TERM, May, 1848.   *Cady, Willard,*
*and Hand,* Justices.

THE TRUSTEES OF THE FIRST BAPTIST CHURCH IN THE CITY OF SCHENECTADY *vs.* THE UTICA AND SCHENECTADY RAILROAD COMPANY.(*a*)

In an action by the trustees of a religious society, against a railroad company, the declaration alleged that the religious society had been disturbed, during divine worship on the sabbath, in the church edifice, by the noise made by the defendants in the use of their road, by which the property had become very much depreciated in value and rendered unfit for use as a church or house of religious worship, and claimed damages therefor; *Held,* on demurrer, that although the injuries complained of might amount to a public nuisance, yet that no action could be sustained by the plaintiffs, as owners of the building, for the depreciation in the value thereof; the consequences being too remote.

*Held also,* that if the plaintiffs could not recover on account of the depreciation of their property they could not recover at all; the congregation or society worshipping in the church, and not the plaintiffs, being the persons molested.

The custody and management of the real estate of a religious corporation belongs to the trustees, as such; but they can not sue for disturbing the society, while worshipping in the church edifice, by making a noise.   There must be some injury to the property, immediate or consequential.

Although noise may amount to a nuisance, and is also actionable, yet it must be a very special case in which real estate can be injured by a mere noise, so as to sustain an action for the injury.   *Per* HAND, J.

That which is authorized by an act of the legislature can not be a nuisance.   *Per* HAND, J.

Where the exceptions in a statute are contained in the enacting clause, and not in a proviso, the declaration in an action for a violation of the statute, must negative the exceptions.

(*a*) PAIGE, J. having been counsel, did not hear this case.

First Baptist Church, &c. *v.* The Utica & Sch. Railroad Co.

DEMURRER to declaration. This was an action on the case. The declaration stated that the defendants were the owners or possessors of a certain railroad running near and contiguous to the lot of land belonging to the plaintiffs, as hereinafter mentioned, upon which railroad the defendants were accustomed to run their cars and locomotive engines; and that the said plaintiffs were the owners of a certain piece or parcel of land situate and being in the city of Schenectady, and were lawfully possessed thereof before the construction of said railroad, upon which land a building was erected, and is still standing, of great value, to wit, of the value of $7000, which building was erected for the purpose of being used as a meeting house or place of religious worship, for and by a certain religious society or congregation known by the name of The First Baptist Church in the city of Schenectady; and which building was before and at the time, and since, the committing of the grievances hereinafter mentioned, and still is, used as a place of public worship, by the religious society or congregation aforesaid. Yet the said defendants well knowing the premises, but contriving and wrongfully, improperly and unjustly intending to injure the said plaintiffs and to depreciate the value of their said property for the purpose aforesaid, and to deprive them of the use, benefit and enjoyment thereof, and to annoy, molest and incommode them in the quiet and peaceable use, possession and enjoyment of their said property as a place of religious worship, heretofore, to wit, on the 5th day of April, in the year 1843, and on divers other days between that time and the time of the commencement of this suit, wrongfully, improperly and injuriously, by themselves and their agents, on the sabbath, when the said religious society or congregation were lawfully assembled in said meeting house, and lawfully engaged in public and religious worship, rang their stationary bell contiguous to said house of worship, or caused the same to be rung, and by ringing or causing to be rung their bells attached to their locomotive engines, and by the puffing and whistling of said locomotive engines, and blowing off of steam therefrom, and thereby, while standing near to said house of religious worship; and by the rumbling, jarring noise of said

.railroad cars and steam engines, when moved and propelled by steam on said railroad, and by the unlawful and improper use of their said railroad, on the sabbaths, disturbed, annoyed and molested the said society or congregation while engaged in worshipping as aforesaid, in the quiet and peaceable use and enjoyment of their property. By means whereof, and in consequence of which, the value of said meeting house and place of worship, for the use and purpose aforesaid, hath been, and still is, greatly depreciated and rendered entirely unfit for, and valueless as, a house of religious worship, &c. To this declaration the defendants demurred specially. Joinder.

*P. Potter*, in support of the demurrer.

*N. Hill, Jr. & D. Wright* for the plaintiffs.

*By the Court*, HAND, J. The fair construction to be given to the declaration in this case is, that the church or society, occupying the church edifice owned by the plaintiffs, had been disturbed during divine worship on the sabbath, by the noise made by the defendants in the use of their road, by which the property has very much depreciated in value for use as a church. It would be a forced construction to consider it a charge of doing this unnecessarily, wantonly and maliciously, and for the sole purpose of disturbing the congregation. These acts I understand to be alledged to be unlawful, not from any such motive or cause, but because the road was used on the sabbath. Considering this as the gravamen of the case, I think the demurrer well taken.

The mere consequential advantages or disadvantages of a railroad to a neighborhood, can not be the subject of private action. Its termination, for instance, may incidentally influence the.value of real estate ; greatly enhancing the property of some persons in the vicinity ; but the corporation can claim no compensation for this improvement ; while others may suffer a corresponding depreciation and be remediless. .These are fluctuations to which real property is subject ; and on the one hand

there is an accidental advantage for which the fortunate owner makes no return, and on the other it is *damnum absque injuria:* In *Hughes* v, *Heizer* it was held that one whose raft was stopped by an obstruction in a navigable river could maintain an action. (1 *Bin.* 463.) But Sutherland, J. in *Lansing* v. *Smith,* (8 *Cowen,* 167,) after stating this case, remarks, "Suppose the consequential injury complained of had been the depreciation of the value of his lot, or his timber, whereby he was prevented from selling either the one or the other for as large a price as he could have obtained before the navigation of the river was impeded by the dam. He would, I apprehend, have been told that there was nothing peculiar in his case; that if his land and timber were rendered less valuable by the obstruction placed in the highway leading to a market, so were the land and timber of his neighbors and of all others above the dam; that the erection of the dam was a public offence, and the defendant could be punished criminally for building it, and the dam itself be demolished by a public prosecution; and that public policy forbade that a multitude of suits should be brought for an act which essentially concerned the public; although in its remote effects it might bear peculiarly upon a particular district." And the case of *Lansing* v. *Smith* was decided upon this principle, and affirmed in the court for the correction of errors. (4 *Wend.* 9.) The mutations in business, and the consequent change in the value of property, constantly occurring from the improvements of the day, are as a general thing not foundation for a legal claim. Few railroad companies could sustain themselves under such a rule of accountability. Therefore, although the abuses alledged may amount to a public nuisance, we are inclined to the opinion that as to the plaintiffs, as owners of the building, the consequences are too remote.

And if the plaintiffs can not recover on account of the depreciation of their property, they cannot recover at all. The congregation and society worshipping there, and not the plaintiffs, are the persons molested. The custody and management of the real estate of a religious corporation belongs to the plaintiffs as trustees, but they cannot sue for disturbing the society while worshipping

in the church edifice, by noise.   There must be some injury to the property, immediate or consequential.   No case has been cited, and I think none can be found, where a suit has been maintained for injury done to real estate by mere noise, although many nuisances removable in their nature may be an injury, even to the reversion. ( *Tuckerman* v. *Newman,* 11 *A. & E.* 40.) The occupants who suffer special damage may, in some cases, have a right of action.   The rule is that one who sustains special and particular damage by an act which is unlawful, on the ground of public injury, may maintain an action for his special injury.   It should be actual or particular damage distinct from other citizens, and not in common with those of a class.   ( *Myers* v. *Malcom,* 6 *Hill,* 292.   *Mills* v. *Hall,* 9 *Wend.* 315. *Duncan* v. *Thwaites,* 3 *B. & C.* 556.   *Brill* v. *Flagler,* 23 *Wend.* 354.   *Elliotson* v. *Feetham,* 2 *Bing. N. C.* 134.   *Lansing* v. *Smith,* 8 *Cowen,* 153.   *Spencer* v. *Lond. & Bir. Railway,* 8 *Sim.* 183.   *Price* v. *Dart,* 7 *Cowen,* 609.   *Smith's Lead. Cas.* 131.   *Rosse* v. *Groves,* 5 *M. & Gr.* 613.)   In *Elliotson* v. *Feetham* the declaration stated that the dwelling house of the plaintiff was greatly lessened in value by the noise and fires in the work-shops of the defendants; but that was on demurrer, and there were other allegations sufficient to maintain the action.   I think it must be a very special case in which real estate can be injured by a mere noise.   And besides, the noise in this case is, from its very nature, temporary and occasional.

But I do not think a private action can be maintained by an attendant upon divine worship there, even admitting this were a public nuisance.   He does not receive special or particular damage.   If one can, every one may maintain a suit.   In *Owen* v. *Hinman,* the plaintiff sued for disturbing him in the enjoyment and exercise of public worship, by making loud noises, reading, talking, &c. and was defeated, on the ground that no right of person or property in the plaintiff had been invaded. No damage had been done to his person, property or reputation; and if a suit could be sustained in such cases for noise, the field of litigation would be extended beyond endurance.   The statute has also provided for this offence.   (1 *R. S.* 674, § 64.)

Perhaps it is therefore not necessary to decide the question raised in this case, whether the facts stated in this declaration amount to a common nuisance. But if it were, I should doubt that position very much. Unquestionably noise may amount to a nuisance, and is also actionable. (*Brill* v. *Flagler*, 23 *Wend.* 354. *Elliotson* v. *Feetham*, 2 *Bing. N. C.* 134. *Street* v. *Tugnell*, cited 2 *Sel. N. P.* 299. *Carrington* v. *Taylor*, 11 *East*, 571. *Keeble* v. *Hickeringill*, *id. ib. n.* *Rex* v. *Smith*, *Stra.* 704.) But that which is authorized by an act of the legislature cannot be a nuisance. The reason that a private action will not lie for a common nuisance, unless there be special or particular damage, is not only because of multiplicity of suits, but the king is intrusted with the remedy. (*Iveson* v. *Moore*, *Com.* 59.) A party having this license from government may be liable *civiliter* for a misuse of his privileges, on the principle *sic utere tuo ut alienum non lædas*, but not *criminaliter ;* nor can the erection be abated as a nuisance. (*Sutherland, J. in Crittenden* v. *Wilson*, 5 *Cowen*, 167. *The People* v. *Platt*, 17 *John.* 195.) Where a railroad corporation had authority by statute to make a railway on a given line, not deviating therefrom over 100 yards, and within that limit made their track about one rod from an ancient highway, and the horses of travelers were in consequence frightened by their trains, it was held that this interference with the rights of the public must be taken to have been sanctioned and contemplated by the legislature ; and that an indictment for a nuisance would not lie. (*Rex* v. *Pease*, 4 *B. & Ad.* 30.) And there are several authorities bearing upon the same point. (*Lex. & O. R. R.* v. *Applegate*, 8 *Dana*, 289. 2 *Kent*, 340. *Bloodgood* v. *M. & H. R. R. Co.* 18 *Wend.* 1. *Fletcher* v. *A. & S. R. R. Co.* 25 *Id.* 462. *Hamilton* v. *The New-York & Harlem R. R. Co.* 9 *Paige*, 171. *Hudson & Del. C. Co.* v. *New-York & Erie R. R. Co. Id.* 323. *Wilson* v. *The Black Bird Creek Marsh Co.* 2 *Peters*, 245. *The People* v. *Sar. & Rens. R. R. Co.* 15 *Wend.* 113. *The Mohawk Bridge Co.* v. *The Utica & S. R. R. Co.* 6 *Paige*, 554. *Williams* v. *Wilcox*, 6 *A. & E.* 314. *Rex* v. *Morris*, 1 *B. & Ad.* 441.)

It is also alledged that the acts complained of were done on the sabbath. That would be unlawful, by the statutes of this state, unless within one of the exceptions. But as the exceptions are in the enacting clause of the statute, and not in a proviso, the declaration must negative the exceptions. (*Spiers* v. *Parker*, 1 *T. R.* 141. *Street* v. *Smith*, 1 *B. & Ad.* 94. 1 *Ch. Pl.* 206. *Dwar. on Stat.* 661. *Teel* v. *Fonda*, 4 *John.* 304.) The acts of the defendants were lawful on that day, unless prohibited by statute. (*Story* v. *Elliott*, 8 *Cowen*, 27. *Boynton* v. *Paige*, 13 *Wend.* 425. *Sayles* v. *Smith*, 12 *Id.* 67.) The statute is, " Nor shall any one travel on that day, unless in cases of charity or necessity, or in going to and returning from some church or place of worship within the distance of twenty miles, or in going for medical aid or for medicines, and returning, or in visiting the sick and returning, or in carrying the mail of the U. States, or in going express by order of some public officer," &c. " Nor shall there be any servile laboring or working on that day unless" done by persons who keep Saturday as a holy time, &c. (1 *R. S.* 675, § 70. *Watts* v. *Van Ness*, 1 *Hill*, 76.) The same language is used here to introduce the exceptions, as in *Spiers* v. *Parker*, (*supra.*) It does not appear, therefore, by this declaration, that the defendants were unlawfully traveling on that day. Consequently it does not become necessary to inquire whether, had these acts been illegal because done upon the sabbath, they would have constituted a nuisance, any more, for that reason.

There must be judgment for the defendants, with leave to amend on the usual terms.(*a*)

(*a*) See *The First Baptist Church in the City of Schenectady* v. *The Schenectady and Troy Railroad Company*, (5 *Barb. Sup. Court Rep.* 79,) where a contrary decision was made by the justices of the third district. It will be seen that the present case was first decided; but it does not appear whether it was brought to the notice of the court in the case above referred to. Owing to the novelty and interest of the principles discussed, it has been deemed advisable to report both of these cases. The growing importance of decisions of this nature, under the rapid extension of our railway system, and the immense variety of public improvements constantly going on, seems to render this course expedient and proper, in the present instance.