JOHN HOLM

v.

THE VILLAGE OF WINDSOR AND RICHARD PETRIE.

*Injunctions—Vacation of Village Street—Powers of Village Board—When Court Will Interfere.*

In order that a court of equity may be authorized to interfere by injunction with the action of a village board in vacating a public street there must be a clear case of irreparable damage shown to some individual who is specially damaged, different from the general public.

[Opinion filed December 8, 1890.]

IN ERROR to the Circuit Court of Mercer County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. PEPPER & SCOTT, for plaintiff in error.

Messrs. BASSETT & BASSETT, for defendants in error.

LACEY, J.    This was a bill in equity charging that the complainant was the owner of lots 3, 4, 5, 6, 7 and 8, in block 52, in the village of Windsor, Mercer county, Ill.; that when he bought them, they had streets on the east, west and south of them; that two of the lots, 4 and 5, abutted on 7th street, and that there was no means of access to them except by way of 7th street, which was in existence, and open and used by the public when he bought said lots; that, relying on his right to the perpetual use of said street, the complainant built and erected his barns, stables, cattle and hog pens and lots upon said two lots, and that 7th street was absolutely necessary for the purpose of use of and access to said lots and the buildings situated thereon.

That the village board, by resolution, fraudulently and illegally declared that part of 7th street north of Mulberry street, vacated, at the instigation of one Richard Petrie, not at the request or for the benefit of said village, nor at the

request or for the benefit of any of the inhabitants thereof, nor for the benefit or welfare of the public, but solely for the benefit of said Petrie, and thereby cut off the said lots, barns and buildings as aforesaid from access to any street; that said action prevents the complainant from using the street and cuts off his access to his barn-yard, stables and stock yards, and rendered them useless so far as any way of getting to them is concerned; that said action renders the two lots, barn-yard, barns and stables entirely valueless except they should be held and owned in connection with other property abutting on a street, etc. These are the material allegations as found in the abstract.

The prayer of the bill was to set aside the resolution of the village board in regard to the vacation of the portion of the street designated in the bill and declare the order to be illegal and void, and that Petrie be restrained from closing or keeping closed the street, and to remove all obstruction placed thereon by him, and that plaintiff in error be reinstated in the use of the street and access to his property thereby. The court below sustained a demurrer to this bill, and plaintiff in error not answering, was decreed to pay the costs.

We are of opinion the court decided correctly. Taking all of the allegations of the bill together, we do not think there is any allegation of any damages done to the complainant's property, saying nothing of irreparable damages. It is true plaintiff in error charges that the vacation of the street cuts him off from any access to his barn, stables and stock yards, and renders them useless so far as any way of getting to them is concerned.

Then he follows with another allegation which qualifies this one very materially, thus: "That said action renders the said two lots, barn yard, barns and stables, entirely valueless except they should be held and owned in connection with other property abutting on a street. It appears from the bill that he owned six lots in a body and that the other four, which joined the two lots on the east and south, abutted on two different streets, to wit, Mulberry and 6th streets, and that free access could be had to his barns and stables over any

of these from either of those streets. Now these lots were
held and occupied in a body together, and there is no charge
that his property as a whole was in the least damaged.

All there is of the charge is, that if the two lots were con-
sidered separately from the other parts where his house was,
as we infer, they would be valueless. But we are nowhere
informed that his property, as it was then situate, as a whole,
was in any way damaged.

Then taking the bill most strongly against the pleader and
holding it made the strongest case the facts warranted, we
are authorized to infer that while, if the two lots were sep-
arated from the remainder of his premises they would have
been damaged, yet as it was, his property was not damaged,
(he having access to his barns and stable through his other lots).
or himself materially discommoded by the vacation of 7th
street. It is not a light thing to interfere by injunction with
the action of village authorities in regard to the exercise of
their legal functions. The case to authorize it must be clear,
and a case of irreparable damage be shown to some individual
who is specially damaged, different from the general public.

Dillon in his work on Municipal Corporations, lays down
the doctrine in these words, Sec. 666:

" The plenary power of the Legislature over streets and
highways is such that it may, in the absence of special consti-
tutional restriction, vacate or discontinue them, or invest
municipal corporations with this authority. Without a judi-
cial determination a municipal corporation, under the au-
thority conferred in its charter to locate and establish streets
and alleys and *vacate* the same, may constitutionally order the
vacation of a street, and this power when exercised with due
regard to individual rights will not be restrained at the
instance of a property owner, claiming he is interested in
keeping open the streets dedicated to the public." By our
statute, " cities and villages" have such power delegated to
them. Chap. 24, head, " Powers."

It has been held in New York that " The Legislature may,
without providing for compensation to adjoining owners,
provide for the closing of one public way to their property,

if another way is left open." Caster v. N. Y., 43 N. Y. 399 ; Kellinger v. Street Railroad, 50 N. Y. 206 ; Fearing v. Irwin, 55 N. Y. 486 (1874). The idea that a city holds the streets in trust for the benefit of the incorporators, though accurate enough in one sense of the word, is not sanctioned by the later decisions of the Supreme Court. Chicago v. Rumsey 87 Ill. 355; People ex rel. v. Walsh et al., 96 Ill. 232. The city, it is said in the last case, " holds the fee for the use of the public—not the citizens of the city alone, but the entire public—of which the Legislature is the representative." See also City of Chicago v. Union Building Association, 102 Ill. 379. It is said also in the latter case that "perhaps it may be said there is a special trust  *  *  *  in favor of adjoining property holders,"—to the extent that the city must pay the damages for depriving them from access to their property, by way of the adjoining street. A party who is damaged by the vacation of a street adjoining his property has a remedy at law against the city or village to recover such damages, and such right in its nature is " legal." Zinc Co. v. City of La Salle, 117 Ill. 411; City of Pekin v. Brereton, 67 Ill. 477; Rigney v. Chicago, 102 Ill. 81. Such person has maintained at least in one instance in this State (Carter v. City of Chicago et al., 57 Ill. 283) a bill in equity to restrain carrying out an order to obstruct the street (or sidewalk) opposite the property owner's lot.

It is intimated in that case the jurisdiction of equity was maintained on the grounds the city was a trustee as well as that an irreparable injury was about to be committed.

In that case it appeared very clearly that a court of equity had jurisdiction to enjoin to prevent an irreparable injury, and the other questions were not necessarily involved. We doubt very much whether a city or village is a trustee in such case, in the technical meaning of that word, so as to give a court of equity jurisdiction solely on that ground. In the case at bar there is in our judgment no irreparable injury shown. If there was any injury it could clearly be proven and recovered at law.

For the above reasons the decree of the court below is affirmed.                              *Decree affirmed.*